MOORE, J.
|! John Shidler, a notary public in Bossier City, appeals a summary judgment that dismissed his claims of defamation, abuse of process and related matters against Thomas H. Palmer II, Palmer’s attorney, Richard E. Hiller, and a law firm, Shuey Smith LLC. Shidler also contests the trial court’s failure to grant his own motion for summary judgment against Palmer and other parties. For the reasons expressed, we reverse in part, affirm in part and remand.

Factual Background

Palmer, a homeowner in Bossier City, went online in 2002 to refinance his home loan. He received an offer from Ameri-quest Mortgage for a loan of $131,000 at 9.7% APR, and accepted it. Ameriquest, a California corporation, used the New Orleans-based company True Title Inc. to perform the title examination. True Title in turn hired John Shidler to notarize the transaction. The closing was set for September 26, 2002, at Palmer’s house on Hickory Ridge Drive.
Shidler arrived at the appointed place and time carrying a FedEx box from Am-eriquest. The box, however, contained only one set of documents, so there was no copy to be left with Palmer. Eager to process the loan, Palmer signed the only set; Shidler advised him that Ameriquest would forward his copies in a few days. With Shidler’s approval, Palmer’s wife, Brandy, signed various documents as a witness; the house was Palmer’s separate property.
Ameriquest issued two checks covering the loan proceeds and, sometime in November sent Palmer a copy of the mortgage and settlement | ¡.statement. Palmer made his first scheduled payment of $1,130.61 in December 2002, but made no further payments because of a dispute with Ameriquest over the amount of his monthly note.
Palmer did not receive a complete copy of the loan documents until January 13, 2003. This included an adjustable rate note (“ARN”) marked “ne varietur” and notarized by an attorney other than Shi-dler, and the statutory notice of right to cancel within three days. Palmer signed this notice and returned it to Ameriquest *297 on January 16, 2003. Apparently Ameri-quest deemed this notice untimely and disregarded it. In February, Ameriquest sent Palmer a notice of intention to foreclose.

Procedural History

In September 2003, Palmer filed this suit against Ameriquest, True Title and Shidler, seeking rescission of the loan and mortgage, together with general damages. With respect to Shidler, he alleged:
(a) at the conclusion of the closing on September 26, 2002, Petitioner did not receive any copies of the refinance loan closing documents, and specifically did not receive the required notice to rescind his loan;
(b) since Mrs. Palmer should have executed the mortgage as an intervening spouse, and not as a witness, Shidler in effect closed this loan with only one witness on the mortgage;
(c) the settlement statement reflects a settlement date of October 3, 2002, when in fact, the settlement occurred on September 26, 2002; further the settlement statement indicated that this date was “estimated”; also the payoff figures used on the settlement statement and the disbursement of funds to Petitioner did not match;
(d) the Adjustable Rate Note is notarized by a completely different notary than Shidler who, in fact, notarized the mortgage itself; in other words, the notary who put his signature on the note as |shaving witnessed Petitioner’s signature on September 26, 2002 was not present when Petitioner signed the note; further, in an attempt to correct this obvious illegality, Ameriquest and Shidler subsequently marked up the Adjustable Rate Note by scratching out the original “Ne Varietur” language and notary’s signature, and then, by a hand-written method, Shidler inserted his own “Ne Varie-tur” language and signature.
(Emphasis added.)
The petition was signed by “Shuey, Smith, Reynolds, Rios & Hiller, LLC” and Richard E. Hiller as attorney for Palmer.
Shidler answered the petition and averred that supplying copies of the loan package was Ameriquest’s duty, not his, and denied that he altered or falsified any of the loan documents. He reconvened against Palmer and Hiller on grounds of defamation, abuse of process, negligent infliction of emotional distress and other claims. Alleging his damages would exceed $50,000, he demanded a jury trial. Later, Shidler amended his reconventional demand to add Hiller’s law firm, now known as Shuey Smith LLC.
Palmer and Hiller initially responded with an exception of no cause of action. They contended that Shidler could have moved for summary judgment or for sanctions, but there was simply no relief afforded by the law of defamation or abuse of process.
At a hearing in June 2005, the district court overruled the exception of no cause of action but suggested that each party file a motion for summary judgment. On the date of the hearing, Shidler filed a motion in limine, essentially seeking to prohibit Palmer and Hiller from testifying or Larguing many of the allegations raised in their original petition. In support, Shidler attached a copy of Palmer’s deposition. In this, Palmer admitted that all his own signatures on the loan documents were genuine; he did not know whether the ARN was improperly notarized; and Shidler’s actions did not prevent him from receiving the loan proceeds. Palmer also admitted that he was financially strapped at the time of the refinance because his overtime *298 had ended, and was displeased that Ameri-quest had increased his monthly note by $200 in December and January. However, he conceded that the increase was probably to cover a shortfall in his escrow account due to a hike in homeowner’s insurance. He repeatedly admitted having no idea what if anything Shidler had done wrong, and that filing the suit was Hiller’s idea.[1]
As requested, Shidler filed a motion for summary judgment (actually part of a longer pleading called “omnibus motions”) urging that Palmer, Ameriquest and True Title failed to show any law or duty that Shidler had breached. After the discovery deadline, Shidler filed a “statement of established facts,” reiterating that he breached no duty and that Palmer was not harmed by any of his actions. To this, he attached a copy of the notice of right to cancel (signed September 26, 2002) and another copy of Palmer’s deposition.
Palmer and Hiller, joined by Shuey Smith LLC, filed their own motion for summary judgment, urging that Shidler had asserted 16 causes of actions. Some of these (negligent infliction of emotional distress, false light |Kto public, negligent information) were not recognized in Louisiana; others (damage to credit, damage to reputation, damage to business reputation) were not causes of action but elements of damage. On the substantive claims — defamation, abuse of process and malicious prosecution — they argued there was no genuine issue of material fact. In support, they attached a statement of uncontested facts which tracked verbatim the allegations in the original petition. They also attached the affidavits of Brandy Palmer and Lois Ann Dawson, who signed the closing documents as witnesses. Finally, they attached the affidavits of Hiller himself and Julio Rios II, the managing member of Shuey Smith LLC. These latter affidavits asserted that Hiller had never been employed by the firm.

Action of the District Court

At the hearing on the motions, Hiller (representing both himself and Palmer) announced that Palmer and Ameriquest had settled all claims between them, pending finalization of the settlement documents; counsel for Ameriquest confirmed this.
Shidler restated his position that Palmer and Hiller accused him of committing various notarial errors in the closing documents, but they failed to show that he breached any duty or that Palmer was harmed. Hiller responded that Palmer’s deposition was not in the record, and thus Shidler’s motion for summary judgment had no factual support; Ameriquest joined this argument. Hiller offered that Shidler breached the general duty to “handle the closing properly,” and contended that Shuey Smith LLC was not his employer.
|fiThe district court admitted it was not “up to speed on the way loans are being closed now,” but considered it “pretty risky” to send the notary out of the office to close the loan elsewhere. Because of this risk, the court could not “conclude that this is a completely frivolous lawsuit,” so it denied Shidler’s motion for summary judgment.
As for the opposing motion, the court stated that Hiller and Shuey Smith LLC were not the proper parties as the object of the reconventional demand. It therefore granted their motion for summary judgment, but added, “If you got a malicious prosecution claim[,] that can be * * * raised at another time.” When *299 asked by Shidler’s counsel, the court declined to state which law or duty Shidler had violated.
The judgment granted Palmer, Hiller and Shuey Smith LLC’s motion for summary judgment, dismissing all of Shidler’s claims against them, and denied Shidler’s motion for summary judgment against Palmer, Ameriquest and True Title.
Shidler has appealed.

General Principles

The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Foley v. Sportran, 40,624 (La.App. 2 Cir. 5/17/06), 930 So.2d 368. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon’s Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226.
Despite the favored status of summary judgment procedure since the 1996 and 1997 amendments to art. 966, summary judgment is seldom appropriate for determinations based subjective facts of motive, intent, good faith, knowledge or malice. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002, and citations therein. Appellate review of the grant or denial of a summary judgment is de novo. Id.
Defamation is a tort which involves the invasion of a person’s interest in his or her reputation and good name. Fitzgerald v. Tucker, 98-2313 (La.6/29/99), 737 So.2d 706. Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129. The fault requirement is often described in the jurisprudence as malice, actual or implied. Id.
Defamatory words are, by definition, those which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or | ¡¡otherwise expose a person to contempt and ridicule. Id. Words which convey an element of personal disgrace, dishonesty or disrepute are defamatory. Fitzgerald v. Tucker, supra. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one’s personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. Costello v. Hardy, supra; Kosmitis v. Bailey, 28,585 (La.App. 2 Cir. 12/20/96), 685 So.2d 1177. When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Kosmitis v. Bailey, supra. If malice is not presumed, it must be proved as a lack of reasonable belief in the truth of the statement giving rise to the defamation. Costello v. Hardy, supra.
An action for defamation arising out of allegations made in judicial proceed *300 ings and against a party to those proceedings cannot be brought until those proceedings are terminated. Loew’s Inc. v. Don George Inc., 237 La. 132, 110 So.2d 553 (1959); Steed v. St. Paul’s United Methodist Church, 31,521 (La.App. 2 Cir. 2/24/99, 728 So.2d 931), writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290. Not only the party, but also his attorney, may be liable for defamation if the attorney makes defamatory statements “maliciously or without reasonable basis.” Freeman v. Cooper, 414 So.2d 355 (La.1982); Calvert v. Simon, 311 So.2d 13 (La.App. 2 Cir.1975).
The elements of a malicious prosecution action are (1) the commencement or continuance of an original criminal or civil judicial | nproceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. Jones v. Soileau, 448 So.2d 1268 (La.1984); Rogers v. Ash Grove Cement Co., 34,934 (La.App. 2 Cir. 11/2/01), 799 So.2d 841, writ denied, 2001-3187 (La.2/8/02), 808 So.2d 351.
Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law. Waguespack, Seago & Carmichael v. Lincoln, 99-2016 (La.App. 1 Cir. 9/22/00), 768 So.2d 287. The two essential elements of an abuse of process are an ulterior purpose and a willful act in the use of process not proper in regular conduct of the proceeding. Hall v. Lilly, 27,891 (La.App. 2 Cir. 1/24/96), 666 So.2d 1328. Unlike claims of defamation and malicious prosecution, a claim for abuse of process may be asserted prior to the termination of the litigation in which the allegations were made. Wag-uespack, Seago & Carmichael v. Lincoln, supra.

Discussion: Admission of Palmer’s Deposition

By his fourth assignment of error, Shi-dler urges the district court erred in rendering judgment without identifying any law, statute, regulation, duty or obligation that he ever violated. He further contends that affidavits are not the only discovery device allowed to support a motion for summary judgment; depositions are expressly allowed under art. 966 B. Specifically, he contends the district court erred in refusing to consider Palmer’s | indeposition, which Shidler filed in the record on June 20, 2005.
The appellees contend that Shidler failed to attach a copy of this deposition to his motion for summary judgment, or even to present it to the district court at the hearing on October 10, 2005, so this court should disregard all references to it in Shidler’s argument. In support, they cite the letter of Shidler’s counsel, written the day after the hearing, admitting a “misrepresentation to the court” and that in fact “the deposition had not been filed into the record as I represented to the court.” Finally, they submit that the record does not conclusively show that the district court declined to consider the deposition.
Counsel for Shidler attached a complete copy of Palmer’s deposition to the “omnibus motions” filed into the record on June 20, 2005. He did not attach it to his motion for summary judgment, but at the hearing he referred to the deposition and advised the court that it was in the record. This was sufficient to direct the court’s attention to a deposition that was already on file within the meaning of art. 966 B. Moreover, although the transcript is not entirely clear on this point, the deposition and other factual assertions raised in the *301 omnibus motions may well have influenced the district court to deny the exception of no cause of action and instead ask the parties to raise these issues by motions for summary judgment. Under the circumstances, the deposition was on file and its existence was clearly pointed out to the court. On de novo review, this court will consider it.
We would nonetheless caution counsel that standards of professionalism will normally require that summary judgment evidence be |n attached to the motion for summary judgment or to a timely memorandum in support thereof. Courts cannot be expected to sift through voluminous (and in this case, diffuse) pleadings in search of depositions and affidavits.[2] Counsel’s letter to the district court, seeking to correct a perceived misrepresentation, was not particularly helpful as the deposition was already on file.[3] With this admonition, the court will consider the deposition on the substantive issues presented.

Grant of Appellees’ Motion for Summary Judgment

By his first assignment of error, Shidler urges the court erred in granting Palmer, Hiller and Shuey Smith LLC’s motion for summary judgment; by his third assignment, he urges the court should have found their original petition “an unfounded frivolous lawsuit.” He contends that Palmer, as plaintiff, and Hiller and Shuey Smith LLC, as attorneys, accused him of four acts of professional misconduct in closing the loan, all of which were either patently false or not Shidler’s actions. He cites and discusses various state laws and federal regulations, concluding that the appellees offered no evidence to create a genuine issue of material fact as to whether he violated any of them.
The appellees respond that they supported their motion with a statement of uncontested facts that “clearly and definitively set forth the unfrivolous nature” of their claims. They also filed four affidavits which | n,,supported such points as that Shidler delivered only one copy of the closing documents at the closing and allowed Palmer’s wife to sign the mortgage as a witness; a final affidavit asserted that Hiller was never a member of the Shuey Smith LLC law firm. By contrast, they contend, Shidler filed nothing in opposition, thereby showing to the exclusion of any genuine issue of material fact that their original petition was not frivolous. They conclude that in point of fact, it was Shidler’s reconventional demand that is frivolous and without any basis in fact.
While Shidler’s pleadings are no model of artful draftsmanship, we are constrained to find that they create genuine issues of material fact. The gist of the matter is that Palmer’s original petition accused Shi-dler of four acts of professional misconduct. Most strikingly, it alleged that he altered or falsified the ARN by scratching out the original notary’s signature and inserting his own.[4] This is not the generic *302 “plain vanilla” allegation of professional misconduct that was deemed nondefamato-ry in Costello v. Hardy, supra. It is a direct accusation of serious professional misconduct which could easily harm Shi-dler’s business reputation by discouraging other lenders from using his services and strongly implies criminal acts.[5] The allegation of defamation per se creates a presumption of falsity and malice; at the very least, it creates a genuine issue as to whether these elements were present.
_[i2Palmer also accused Shidler of incompetence by allowing Brandy Palmer to sign as a witness instead of an “intervening spouse,” but there is no substance to this claim.[6] Finally, Palmer complained of not receiving sufficient copies of the loan package, but did not directly accuse Shidler of this deficiency. In short, Shidler alleged that the appellees uttered words that are defamatory, and perhaps defamatory per se. He further alleged unprivileged publication in the appellees’ original petition and resultant damages.
Finally, Shidler showed that Palmer and Ameriquest have settled all underlying claims. This satisfies the requirement that the original action must be terminated before the plaintiff can proceed with his defamation or malicious prosecution claim. Palmer steadfastly maintained that Shidler was Ameriquest’s agent; if the rescission claim has been resolved favorably to Am-eriquest, this strongly suggests that Shi-dler committed no professional errors. At the very least, the genuine issue remains as to what independent claims, if any, could be pursued against Shidler.
As noted, the appellees’ statement of uncontested facts tracked the allegations of their original petition. Their affidavits confirmed that Shidler delivered only one set of documents and allowed Brandy Palmer to sign as a witness; an affidavit from the managing member of Shuey Smith LLC denied that Hiller was employed by that law firm. These documents dispute Shidler’s claims that the original petition contained defamatory statements.
In opposition to the motion for summary judgment, Shidler offered h ¿Palmer’s deposition, plainly showing that Palmer was unaware of any wrongdoing on Shidler’s part; despite any alleged irregularities, the loan was completed. This evidence suggests that the original petition was filed with knowledge that the allegations therein were false.
Simply put, this record leaves open genuine issues of material fact with respect to Shidler’s defamation claim, i.e., whether the allegations of misconduct were false, and whether the appellees knew they were false. Moreover, to the extent that the appellees’ motives and intent in filing the suit may be relevant to defamation, these are matters that are simply not amenable to summary judgment disposition. Jones v. Estate of Santiago, supra.
We also note that the issue of Hiller’s status with Shuey Smith LLC was unsuited for summary judgment. The signature on original petition strongly suggests his membership in the firm:
*303 Shuey, Smith, Reynolds,
Rios & Hiller, LLC,
ATTORNEYS AND COUNSELORS AT LAW
[Address and phone number given]

s/ Richard E. Hiller

RICHARD E. HILLER
[Louisiana Bar Roll No. given]
Julio Rios’s affidavit denied that Hiller was ever a member of the firm, but the capacity of the parties signing a document is a matter of intent to be determined by the circumstances of the transaction. Wirthman-Tag Const. Co. v. Hotard, 2000-2298 (La.App. 4 Cir. 12/19/01), 804 So.2d 856. Being a matter of intent, this is not suited for summary judgment disposition.
11f,Because of these conclusions, we pre-termit discussion of the numerous other claims asserted in Shidler’s reconventional demand. We would agree with appellees that many of Shidler’s claims do not state recognized causes of action, or carelessly label items of damage as causes of action. Nevertheless, there are genuine issues of material fact as to the defamation claim and the closely related claims of malicious prosecution and abuse of process. Because we must reverse the summary judgment, we decline to analyze these voluminous pleadings any further. The remaining issues are to be litigated on remand.

Denial of Shidler’s Motion for Summary Judgment

By his second assignment, Shidler urges the district court erred in denying his own motion for summary judgment. He contends, in essence, that because the appel-lees failed to identify any wrongful conduct on his part, there is no genuine issue of material fact as to the claims raised in his reconventional demand.
The appellees urge that Shidler “committed several careless and negligent acts in the performance of his duties in closing the loan,” which they summarize as “failure to have the mortgage properly executed.” They seek affirmance.
Ameriquest contends that the ruling denying Shidler’s motion for summary judgment was interlocutory and not subject to appeal. La. C.C.P. arts. 968, 2083. Even if the matter were appealable, Ameriquest submits the court was within its discretion to deny Shidler’s motion as his status (merely a notary or Ameriquest’s agent) was a genuine issue of material fact for 11 ¡¿rial.
Ameriquest’s position has merit. An appeal does not lie from the court’s refusal to render any judgment on the pleading or summary judgment. La. C.C.P. art. 968; Thomas v. Albertsons Inc., 28,950 (La.App. 2 Cir. 2/11/96), 685 So.2d 1134, writ denied, 97-0391 (La.3/27/97), 692 So.2d 395. We decline to take this case under our supervisory jurisdiction because, for the reasons already discussed, this record leaves open several genuine issues of material fact as to Shidler’s claims. This assignment of error lacks merit.

Conclusion

For the reasons expressed, we reverse the portion of the judgment that granted summary judgment in favor of Thomas H. Palmer II, Richard Hiller and Shuey Smith LLC, and dismissed all of John C. Shidler’s claims against these parties. We affirm the portion of the judgment that denied John C. Shidler’s motion for summary judgment. The case is remanded to the district court for further proceedings. All costs are to be paid one-half by the John C. Shidler and one half by Thomas H. Palmer II, Richard Hiller and Shuey Smith LLC.
REVERSED IN PART, AFFIRMED IN PART, REMANDED.
*304 APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, DREW and MOORE, JJ.
Rehearing denied.
GASKINS, J., would grant rehearing.

. After Palmer filed the instant suit, Ameri-quest reconvened for the unpaid principal of $137,358.75 plus legal interest and attorney fees.

.“We will be considerate of the time constraints and pressures on the courts and court staff inherent in their efforts to administer justice.” The Code of Professionalism in the Courts (Supreme Court Rules, Part G, § 11, ¶ 21). "I will not file or oppose pleadings, conduct discovery or utilize any course of conduct for the purpose of undue delay or harassment of any other counsel or party.” The Louisiana Code of Professionalism, Rule 6 (La.Dist.Ct. R. 6.2).

. “We will not knowingly misrepresent, mis-characterize, misquote, or miscite facts or authorities in any oral or written communication to the court.” Id.., ¶ 23.

. The copy of the ARN included in this record, while only a reproduction, does not show *302 any obvious signs of being "marked up” or "scratched out” as alleged in petition.

. La. R.S. 14:72 C(l)(a) makes it a felony to "alter, make, complete, execute, or authenticate any writing so that it purports * * * to be the act of another who did not authorize that act [or] to have been executed at a time or place or in a numbered sequence other than was in fact the case.” La. R.S. 14:133 A(2) makes it a felony to file or deposit any "wrongfully altered document.”

. The wife's consent was formerly required before the husband could sell or mortgage the family home, but this requirement was abolished by La. Acts 1980, No. 237, § 1.